IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ZOUHAIR "DANNY" HILAL,           §
                                 §
     Appellant,                  §
                                 §
v.                               §        CIVIL ACTION NO. H-05-3777
                                 §
RANDY W. WILLIAMS, CHAPTER 11    §
TRUSTEE,                         §
                                 §
     Appellee.                   §

**MEMORANDUM AND ORDER**

This is another appeal by Appellant Zouhair "Danny" Hilal ("Hilal"), this time from an Order of the United States Bankruptcy Court for the Southern District of Texas entered on October 24, 2005, which granted the Trustee's Amended Application to Employ Porter & Hedges, L.L.P. as Special Litigation Counsel Pursuant to 11 U.S.C. § 328(a).  After having carefully reviewed the record, the transcript of the hearing held on October 21, 2005, the evidence presented at that hearing, the findings and conclusions that the Bankruptcy Court made on the record at the conclusion of the hearing, and the applicable law, the Court concludes that the Order granting the Trustee's Amended Application to Employ Porter & Hedges, L.L.P. as Special Litigation Counsel should be AFFIRMED.[1]

---

[1] Appellee's Motion to Dismiss (Document No. 11), in which Appellee seeks the dismissal of this appeal based on Appellant's failure to file a timely brief and prosecute the appeal, is DENIED as MOOT.

## I.  **Procedural History**

On February 4, 2005, Hilal filed a chapter 11 bankruptcy petition.  That filing was precipitated by the forced sale of Hilal's interest in First Capital Interests, L.C.C. and Blue Moon Venture, L.L.C.  That forced sale, in turn, was precipitated by Hilal's failure and refusal to pay a judgment in the approximate amount of $79,000 that had been entered against him in state court. A brief history of the state court proceedings which led to Hilal's bankruptcy filing is warranted.

On November 3, 2000, a judgment was entered in the 270th Judicial District of Harris County, Texas against Hilal and in favor of Johnny and Cassandra Bailey in the amount of approximately $90,000.   Texas's Fourteenth Court of Appeals affirmed the judgment, but reduced the amount of damages by $10,000.   The Baileys, as judgment creditors, then assigned their interest in the judgment to Stephen Riner ("Riner"), their attorney.  Thereafter, upon Riner's pursuit of assets to pay the judgment, the state court signed an order requiring Hilal to turn over his interest in First Capital Interests, L.L.C., a real estate company in which he had a purported interest, to the Constable for public sale in satisfaction of the judgment.  Hilal informed the Constable that he owned no interest in First Capital.  On June 16, 2004, the Harris County clerk issued a Writ of Execution commanding any Texas sheriff or constable to execute on all property owned by Hilal, including First Capital and Blue Moon Ventures, L.L.C., another real estate company.  Notice of the public sale was sent to Hilal

and his attorney on August 4, 2004.  Hilal again asserted that he owned no interest in the two companies.  At the constable's public sale on September 10, 2004, Riner bought Hilal's interest in First Capital and Blue Moon for approximately $18,000.  At the time of the sale, Hilal continued to maintain that he had no interest in the companies.

Afterwards, Hilal challenged the sale in state court, claiming that an interest in a limited liability company is not subject to an execution order, and therefore the sale was void.  In October, 2004, the state trial court denied Hilal's Motion to Declare the Sale Void, and the next month the Fourteenth Court of Appeals denied Hilal's Application for Writ of Mandamus.  The Texas Supreme Court denied Hilal's Application for Writ of Mandamus on February 2, 2005, and then Hilal promptly filed his chapter 11 bankruptcy petition.

After Hilal filed bankruptcy, both Hilal and Riner filed various adversary proceedings seeking control of First Capital and Blue Moon, Adversary Nos. 05-3297, 05-3298, 05-3299, and 05-3300. In connection therewith, Hilal acknowledged that he did have an ownership interest in both companies, and offered to pay Riner $113,472.48 to "undo" the Constable's sale.  Riner rejected the offer.  On June 1, 2005, Randy Williams was appointed as the chapter 11 trustee.

After the Trustee learned that Riner had employed Bracewell & Giuliani to represent Riner in the burgeoning litigation between Hilal, Riner, and the estate over the ownership of First Capital

3

and Blue Moon, the Trustee retained the law firm of Porter & Hedges, L.L.P. ("P&H") on a contingency fee agreement to act as special litigation counsel for the Trustee.  An application to employ P&H as Special litigation Counsel pursuant to 11 U.S.C. § 328(a) was filed by the Trustee on June 27, 2005.  Before that application could be heard, however, Porter & Hedges succeeded in reaching a compromise settlement with Riner whereby:

- The Hilal bankruptcy estate would pay to Riner $5 million within ten days of the 9019 Order.[2]  Riner also agreed to pay $750,000 in taxes to the IRS.

- Riner would release to the Trustee all liens, claims and interests he held in First Capital and Blue Moon.

- The Trustee would assume ownership and management of First Capital and Blue Moon, and begin liquidation of the estate and payment to creditors.

- All pending litigation between the parties would be dismissed with prejudice.

Given the prompt settlement, the Trustee renegotiated the contingent fee contract he had entered into with P&H (25% if settlement were obtained before filing a complaint), and filed an Amended Application to Employ P&H as Special Litigation Counsel Pursuant to 11 U.S.C. § 328(a).  Under the renegotiated contingent fee contract, P&H would receive only 4% of the "gross value of any settlement or recovery" if settlement were reached before filing

---

[2] Bankruptcy Rule 9019(a) provides: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct."

complaint.  On August 1, 2005, a Motion to Compromise Controversy Under Bankruptcy Rule 9019 With Stephen Riner was filed.

On October 21, 2005, a hearing was held on both the Trustee's Motion to Compromise and the Trustee's Amended Application to Employ P&H, at which evidence was received.  No one other than Hilal objected to either motion.[3]  Upon the conclusion of the hearing, the Bankruptcy Court granted the Motion to Compromise and the Amended Application to Employ P&H.  In so doing, the Bankruptcy Court concluded that the compromise settlement with Stephen Riner was in the best interest of the bankruptcy estate, and that the renegotiated contingent fee agreement reached with P&H was reasonable.  In this appeal, Hilal challenges the Bankruptcy Court's order granting the Trustee's Amended Application to Employ P&H as Special Litigation Counsel Pursuant to 11 U.S.C. § 328(a).

## II.  <u>Issues</u>

Hilal sets forth the following issues to be resolved in this appeal:

1.  Did the Bankruptcy Court err and/or abuse its discretion in entering the Order Authorizing Employment of Attorneys (Document No. 402) entered in the captioned case on October 24, 2005, signed by the Honorable Wesley W. Steen, United States Bankruptcy Judge?

---

[3] Conditioned upon the approval of the Motion for Compromise, which the IRS fully supported, the IRS withdraw its objection to the employment of P&H.

2.   Did the Bankruptcy Court err and/or abuse its discretion in finding and/or concluding that Porter & Hedges, L.L.P. represents no interest adverse to the estate and its creditors?

3.   Did the Bankruptcy Court err and/or abuse its discretion in finding and/or concluding that Porter & Hedges, L.L.P. is a disinterested person within the definition of 11 U.S.C. § 101(14).

4.   Did the Bankruptcy Court err and/or abuse its discretion in finding and/or concluding that the employment of Porter & Hedges, L.L.P. as special counsel met with the requirements of the Bankruptcy Code and Bankruptcy Rules?

5.   Did the Bankruptcy Court err and/or abuse its discretion in finding and/or concluding that the engagement of Porter & Hedges, L.L.P. on a contingent fee basis was necessary and/or in the best interests of the bankruptcy estate?

Appellant's Brief (Document No. 12) at vi.  The Trustee maintains that despite Appellant's recitation of five separate issues, the only issues to be decided in this appeal are whether "the Bankruptcy Court err[ed] in approving a contingent fee arrangement under 11 U.S.C. § 328" and whether "P&H ha[d] a conflict that precluded its employment."  Appellee's Brief (Document No. 13) at 2.

### III.  <u>Standard of Review</u>

Bankruptcy Rule 8013 sets forth the standard of review of orders and judgments issued by the bankruptcy courts as follows:

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings.  Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given

6

to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Moreover, a district court reviews a bankruptcy court's legal conclusions de novo.  Matter of Foster Mortgage Corp., 68 F.3d 914, 917 (5th Cir. 1995).  A finding of fact premised on an improper legal standard or on a proper legal standard improperly applied "loses the insulation of the clearly erroneous rule."  Matter of Missionary Baptist Foundation of America, 818 F.2d 1135, 1142 (5th Cir. 1987) (citations omitted).

Here, both sides agree that the standard to be applied in reviewing the Bankruptcy Court's Order granting the Trustee's Amended Application to Employ P&H is whether the Bankruptcy Court abused its discretion.  A bankruptcy Court's discretionary decisions will be set aside on appeal only if "the bankruptcy judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases [its decision] upon findings of fact that are clearly erroneous."  Matter of U.S. Golf Corp., 639 F.2d 1197, 1201 (5th Cir. 1981).

## IV.  Discussion

Hilal challenges the Bankruptcy Court's Order granting the Trustee's Amended Application to Employ P&H on essentially four grounds: (1) that the contingent fee agreement was not reasonable given the number of hours expended by P&H in reaching the settlement with Riner; (2) that the employment of P&H on a contingent basis was not necessary or in the best interest of the

7

estate; (3) that the Bankruptcy Court could not properly approve the employment of P&H under § 328(a) when the work performed by P&H had already been done when the Court gave its approval; and (4) that P&H had a conflict of interest, or was otherwise an interested person, either of which should have precluded P&H's employment as special litigation counsel.

11 U.S.C. § 328(a) provides for the retention of special litigation counsel on a contingent fee basis:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

To gain approval for the employment of special litigation counsel under § 328(a), the terms of such employment must be "reasonable." In re Contractor Technology, Ltd., 2006 WL 1492250 at *10 (S.D. Tex. 2006) (Atlas, J.). "A trustee is given great latitude in the employment of counsel." Id.

At the conclusion of the evidentiary hearing held on October 21, 2005, the Bankruptcy Court made the following observations and findings related to the Trustee's Amended Application to Employ P&H:

With respect to attorney's fees, four percent is the lowest contingency fee I have ever seen in 31 years of practice.  Well, practice and being on the bench.

In addition to whatever work has been done so far, I think there is, as someone put it, the possibility of an appeal of this order.  I think there's an ambiguity in the contract about when Porter & Hedges gets paid and what they get paid on.  I would hope that the trustee – I will insist that the trustee, once the settlement is consummated, get busy with the concept of a plan.  And, you know, I don't plan to hold this case open for 15 years while the assets get liquidated.  So I think Mr. Baker is correct that the contingency fee obligation is not absolutely clear about how Mr. Jones gets paid. Frankly, I don't think it's possible to be more clear right now because as I read the contingency fee contract it says, in essence, that Porter & Hedges gets paid four percent of what the trustee does get.  As Mr. Baker pointed out, there's 20 to 25 million dollars worth of assets in First Capital, but that doesn't tell us what the value of that is.  For the same point I was making a minute ago about Section 548, we don't know what percentage of First Capital Mr. Hilal owns.  We don't know what the liabilities of First Capital are, and we don't know how much it's going to cost to liquidate it or otherwise sell it.  If  the trustee proposes a plan in which he's going to sell the First Capital interest to a third party for X dollars, then we'll have a fairly easy number to compute on.  If the trustee is going to have to liquidate and if there are a gazillion lawsuits against First Capital and this takes forever to liquidate, it's going to be an almost insoluble problem, I think, to figure out what that amount realized by the trustee is.

So I don't think you can define it right now.  I hate ambiguity, but sometimes that's all you've got to work with and that's what I think we have right now.

But I do think the additional work, the appeal and the order, the ambiguity about when and how much Porter & Hedges gets paid makes four percent, frankly, a bargain in this context.

Mr. Baker's argument that I cannot approve a contingency fee retroactively.  First of all, in addressing that argument let me say that if that is correct and that I can only – I cannot look to the time when the contract was effected and the motion – excuse me, and the application for employment was filed, but can only look at this point in time, for the reasons that I

just gave I think it's a bargain.  But assuming that that argument is right – or excuse me, addressing that argument, I don't think that argument is right.

                              *   *   *

[I]t's 328(a).  The trustee may, with the Court's permission, employ or authorize employment of professional persons on any reasonable terms and conditions of employment, including contingent fee basis.

        I don't think that says that the approval of the contingent fee has to be made before the event, that is the contingency occurs.  I think that because the application for employment was filed timely, because it has been continued trying to reach agreement and work through things like the IRS objection, I think I look to the time when the application was filed.  So I disagree with the contention that I look at today and I can't look at the time the application was filed or the time that the agreement was made.

        Mr. Phillips' testimony, while impressive and his credentials are certainly impressive, I think he has limited exposure to the case.  As I understood from his testimony he's limited to looking at documents and exhibits during today's hearing.

        Mr. Phillips, if you can understand this case in that amount of time you're a better man than I because I've been with it since I guess June or July or something and I'm only getting to understand it now.

        But even at that, I think Mr. Phillips' testimony supports the contingency fee.  As I appreciate, he's saying that $200,000 is a high side reasonable number based on an hourly rate and non-contingency.  In this case the contingency fee is to $800,000 and I think it's still contingent on a lot of things, like what the value of First Capital is, on what the appeals are, on how much time is involved and all of that.  I think there are a whole lot of things that are still contingent.  And, you know, the difference between 200,000 on an hourly rate, non-contingent, and 800,000 on a contingent fee that's as contingent as this one is, is not at all unreasonable.

        Finally, on the conflicts issue.  The testimony was that there was disclosure of privileged information.  There are two reason[s] why I find that testimony by itself to be both insufficient and, frankly, appalling.

Number one, disclosure of privileged information
doesn't disqualify someone.  I mean it is altogether
possible to disclose privileged information freely.  I
mean that was no statement that – there is a statement in
the objection that Mr. Hilal was attempting to engage Mr.
Jones as counsel.  That statement wasn't in the record as
evidence.  So basically there was an allegation in a
pleading which is troubling and when not supported by
evidence at hearing, I think, frankly, is appalling.  If
you're going to attack another attorney you need to be
more careful than that.

There is no evidence in the record that Mr. Hilal
tried to hire Mr. Jones or that the disclosure was a
knowing and willing and was not a disclosure that was
required by the substitution of the trustee for Mr. Hilal
as trustee, debtor in possession trustee having the
authority to run the estate.  I know there was a
disclosure of some confidential information; I ordered
it.  So to say there was a disclosure of confidential
information is an insinuation that I think is poorly
done.

Transcript of October 21, 2005 Hearing, attached to Addendum to

Record on Appeal (Document No. 489 in Bankruptcy Case No. 05-36909)

at 240-245.

The Bankruptcy Court's findings are supported by the evidence,

and based on those findings the Bankruptcy Court did not err or

abuse its discretion in granting the Trustee's Amended Application

to Employ P&H.  Although P&H, as argued by Hilal, could arguably

receive as much as a million dollars for their services in reaching

a settlement with Riner (plus successfully defending it on appeal

and actually obtaining for the estate up to $25 million in gross

value), P&H could, just as arguably, receive much less.[4]   The

---

[4] As set forth in the contingent fee agreement, P&H was to
receive 4% of the "gross value of any settlement or recovery."  *See*
Exhibit 1 to the Trustee's Amended Application to Employ P&H as
Special Litigation Counsel Pursuant to 11 U.S.C. § 328(a) (Document

Trustee testified at the October 21, 2005, hearing that P&H would not be paid anything on the contingent fee agreement until the Trustee realized value from First Capital and Blue Moon for the estate.  Transcript of October 21, 2005, Hearing (Document No. 489 in Bankruptcy Case No. 05-36909) at 181-184; 186-188; 197-198.[5]  In addition, as stipulated by the Trustee and P&H at the hearing, P&H's services, for which they receive the 4% contingency fee, includes defending any appeals brought by Hilal challenging either the 9019 Compromise Order or the 328(a) Order approving the employment of P&H.  Id. at 193-195.[6]  Given the many uncertainties as to the value the Trustee ultimately may recover for the estate from First Capital and Blue Moon, the Bankruptcy Court's approval of a 4% contingency fee was not an abuse of discretion.

_____

No. 260 in Bankruptcy Case No. 05-36909).  The "gross value of any settlement or recovery" was defined in the contingent fee agreement to mean "the amount of cash plus the fair market value of any other property (valued at the date received) recovered by or for the Client [the Trustee] from or in connection with the Litigation, including actual and punitive damages, interest and attorneys' fees."  Id.  In addition, the contingent fee agreement limited P&H's contingent fee to the "first $25 million of gross value of any settlement or recovery from the Litigation."  Id.

[5] To date, P&H has received $149,255.55, which represents one payment of $103,215.55 for "interim compensation of professional fees and costs for the period from June 1, 2005 through November 30, 2005," and another payment of $46,040.00 for "interim compensation of professional fees for the period from December 1, 2005 through April 15, 2006."  See Document Nos. 494 & 561 in Bankruptcy Case No. 05-36909.

[6] Since the filing of this appeal, P&H has, on behalf of the Trustee, filed an adversary proceeding against certain of Hilal's family members, seeking a declaration that none of those family members has an ownership interest in First Capital or Blue Moon.  See Document No. 643 in Bankruptcy Case No. 05-36909, and Adversary No. 06-03500.

Hilal complains also that the Bankruptcy Court should have required the Trustee to employ special litigation counsel on an hourly basis rather than on a contingency.  Hilal offered the testimony of David Phillips, a lawyer with nearly 20 years of varied litigation experience, who estimated that litigation of the ownership issues with Riner would have incurred fees and expenses of less than $200,000 on an hourly basis.  When asked specifically about the reasonableness of the P&H contingency fee agreement, however, Phillips offered no opinion, conceding that he had insufficient information and acknowledging that "Mr. Jones and [Porter & Hedges] has an excellent reputation."  Transcript of October 21, 2005, Hearing (Document No. 489 in Bankruptcy Case No. 05-36909) at 215.  The Bankruptcy Court also observed Mr. Phillips's limited acquaintance with the complexities of the dispute, evidently based mostly on documents and exhibits presented on the day of the hearing, which the Bankruptcy Court contrasted with its own understanding of the case based on several months of experience in presiding over it.  Id. at 243.  When viewed in its simplest form, however, the contest between Riner and the estate involved a high stakes total win or total loss case, where the outcome was not "a slam dunk," and where Riner had developed a comprehensive strategy and employed a large law firm with ample resources to advocate his cause.  The Trustee's decision to employ experienced special litigation counsel on a contingency fee under these high risk circumstances was not unreasonable.  The Bankruptcy

Court did not abuse its discretion in approving the contingency arrangement notwithstanding Mr. Phillips's estimate, based on limited and incomplete information about the case, as to what an hourly fee arrangement may have cost.

Hilal also argues that the Bankruptcy Court erred by approving the contingent fee agreement under § 328(a) after the fact--that is, after a substantial portion of P&H's services had already been rendered. Hilal has cited no case law in support of his argument, and the Court has found none. Understandably, in the context of usual circumstances, cases reviewing § 328(a) orders tend to speak in terms of "pre-approval." Here, the evidence shows that P&H was retained on a contingency fee basis by the Trustee on June 20, 2005, and a § 328(a) application for such employment was filed on June 27, 2005. P&H promptly became engaged in the representation and achieved an acceptable settlement with Riner before a hearing could be held on the fee application. That prompt settlement, in turn, precipitated the Trustee to renegotiate the contingency fee agreement to reduce the contingency from 25% to only 4% for attaining settlement before filing a complaint, and the Trustee then filed an amended application to employ P&H based on the sharply reduced contingency. Undoubtedly, by the time a hearing was held on the amended application on October 21, 2005, much of P&H's work had already been accomplished. However, as was made clear at the hearing, P&H had continuing obligations to defend the compromise settlement and the order at issue herein on appeal,

obligations which have proven still to be on-going.[7]  Given the absence of any authority that would preclude the Bankruptcy Court from approving, on the extraordinary facts presented here, the employment of P&H under § 328(a), the Bankruptcy Court did not err or clearly err in granting the Trustee's amended application to employ P&H as special litigation counsel under § 328(a).[8]

Finally, Hilal argues that the Bankruptcy Court should have denied the Trustee's amended application because P&H had a conflict of interest or was otherwise interested in the proceeding.  Hilal bases his conflict of interest/interestedness argument on the contention that he and his attorney, Macon Strother, met with Mr. Jones of P&H in an attempt to hire him before the Trustee sought his services as special litigation counsel for the estate.  As found by the Bankruptcy Court, however, and as is borne out in the record, Hilal met with Mr. Jones of P&H when he was acting as debtor in possession of the estate.  Moreover, as found by the Bankruptcy Court, there is no *evidence* of any specific privileged information that Hilal disclosed to Mr. Jones, none was even

---

[7] Hilal appealed the Bankruptcy Court's Order approving the compromise settlement.  Civil Action No. H-05-3776.  That appeal was dismissed as moot.  Hilal has appealed that ruling to the Fifth Circuit Court of Appeals.

[8] Once a Bankruptcy Court decides on a method and rate of compensation under § 328(a), that order can only be modified and a different manner of rate of compensation used if the original terms and conditions of compensation are proven to "have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions."  11 U.S.C. § 328(a); *see also* Matter of National Gypsum Co., 123 F.3d 861 (5ᵗʰ Cir. 1997).

offered for *in camera* inspection by the Bankruptcy Court, and there is no evidence that Hilal sought Mr. Jones's services for himself personally rather than in his capacity as the debtor in possession of the estate.   The Trustee, who then stood in the same shoes formerly worn by Hilal as debtor in possession, employed P&H to represent the same estate regarding which Hilal had approached P&H. This poses no conflict of interest for P&H, which was simply approached twice about representing the same estate, first by the Debtor in Possession and later by the Trustee.

Hilal's argument that P&H was an interested party and could therefore not have been employed as counsel also has no support in the evidence.   Hilal's notion that P&H has "an interest that is materially adverse to the estate" (Document No. 14, at 10) because of its contingency fee agreement, has no statutory basis and no support in the case law.   *See* 11 U.S.C. § 527 and § 101(14). Moreover, § 328(a) expressly authorizes contingent fee agreements as long as the terms of such are reasonable.

After a careful review of the evidence and of the findings and conclusions announced by the Bankruptcy Court at the conclusion of its October 21, 2005, hearing, the Court concludes that the Bankruptcy Court did not err and did not abuse its discretion in granting the Trustee's Amended Application to Employ P&H as Special Litigation Counsel.

16

## V.   <u>Conclusion and Order</u>

For the foregoing reasons, it is

ORDERED that the Order of the Bankruptcy Court, entered on October 24, 2005, granting the Trustee's Amended Application to Employ Porter & Hedges, L.L.P. as Special Litigation Counsel, is AFFIRMED.  It is further

ORDERED that Appellee's Motion to Dismiss Appeal for Want of Prosecution (Document No. 11) is DENIED as MOOT.

The Clerk shall notify all parties and provide them with a true copy of this Order.

SIGNED at Houston, Texas, on this 19th day of September, 2006.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

17